# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

DANEEN R GREEN,

      Plaintiff,

      v.                             Case No. 4:16-cv-90-JVB-JEM

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

      Defendant.

## OPINION AND ORDER

Plaintiff Daneen R. Green seeks judicial review of the Social Security Commissioner's decision denying her disability benefits and asks this Court to remand the case. For the reasons below, this Court remands the ALJ's decision.

**A.    Overview of the Case**

This is Plaintiff's third appearance before an administrative law judge ("ALJ") to obtain disability benefits. Her first attempt ended in failure. (R. at 87.) Rather than seek recourse with this Court, Plaintiff filed another disability application with an alleged onset date of July 9, 2011, one day after the unfavorable decision. (R. at 170.) A different ALJ denied the new application. (R. at 24.) This time, Plaintiff sought review in this Court, but the parties agreed to remand the case. (R. at 816.) The Appeals Council then sent Plaintiff back to the second ALJ for another hearing. (R. at 826–28). In the meantime, Plaintiff filed yet another application for benefits, which the ALJ consolidated. (R. at 828.) At Plaintiff's new hearing—her third—the ALJ found that she suffered from several severe physical and mental impairments, notably bipolar disorder

and generalized anxiety disorder. (R. at 675). But the ALJ again concluded she could perform jobs that existed in significant numbers. (R. at 683.) Therefore, the ALJ denied her benefits. (R. at 684.) That decision became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.)

**B.	Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

**C.	Disability Standard**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**D.      Analysis**

Plaintiff argues the ALJ (1) failed to properly recognize many of her alleged symptoms; (2) mis-weighed a medical opinion; and (3) improperly translated her concentration, persistence, and pace issues into skill limitations. While the ALJ's decision is not as flawed as Plaintiff asserts, the ALJ left open an entire line of evidence, thus ruining his accurate and logical bridge. This Court must therefore remand.[1]

**(1)     The ALJ Must Address Plaintiff's Seasonal Anxiety**

Plaintiff mainly faults the ALJ for cherry-picking evidence. In support, Plaintiff cites several medical findings the ALJ purportedly ignored. (Pl.'s Br. at 22 n.2.) True, the ALJ must "confront" Plaintiff's evidence, *Thomas*, 826 F.3d at 961, but for the most part he did so. For instance, Plaintiff cites a case summary in which Rachel Johnson, Plaintiff's social worker, noted Plaintiff's complaints of panic attacks in social settings. (R. at 518.) Yet, the ALJ accepted this and accordingly limited Plaintiff to only "occasional interaction with coworkers and supervisors and no interaction with the public." (R. at 676.) The ALJ also found Plaintiff's "symptoms are mostly controlled with medications and therapy." (R. at 682.) And while the ALJ may not have individually addressed each of Plaintiff's cited examples, he need not analyze every single piece of evidence. *Sawyer v. Colvin,* 512 Fed. Appx. 603, 608 (7th Cir. 2013).

However, a closer look at the examples reveals a pattern: Plaintiff's depression and anxiety seem to worsen during Winter. The ALJ needs to address this, because if Plaintiff is employable for only part of the year, then she might be disabled. *Cf. Bauer v. Astrue*, 532 F.3d

---

[1] Plaintiff also wants a new ALJ to hear her case on remand. This Court leaves that decision to the Appeals Council.

606, 609 (7th Cir. 2008) ("Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job."); *but see Schreiber v. Colvin*, 519 Fed. Appx. 951, 960 (7th Cir. 2013) (affirming despite the plaintiff's "emotional anxiety caused by the onset of winter"). Here, although the ALJ noted Plaintiff's "'seasonal' anxiety," he never really discounted it. (R. at 680.) For instance, Plaintiff told Ms. Johnson back in 2011 about "depression during the winter months." (R. at 400.) Plaintiff indicated she could alleviate this depression by doing some projects at home. *Id*. Yet, this was not feasible because of "the chaos in the family." *Id*. The ALJ did note Plaintiff "was exploring ways to stay active over the winter months." (R. at 679.) But Plaintiff's efforts seemed to be in vain: in February 2015, she reported that, despite "attempting to stay busy," she had "more frequent panic attacks that she felt 'came out of nowhere.'" (R. at 1056.)

To be sure, the ALJ acknowledged Plaintiff's "flare-ups." (R.at 679.) Specifically, he noted Plaintiff lost her Medicaid temporarily and endured the death of her sister. *Id*. This, the ALJ found, explained Plaintiff's intermittent issues. But Plaintiff complained about Winter anxiety in September 2011, January 2012, and December 2013. (R. at 400, 403, 1062.) These predate her lapse in Medicaid some time in 2014. (R. at 1059.) Moreover, Plaintiff's sister, whose struggles caused Plaintiff so much stress, passed away almost two years before Plaintiff complained about out-of-nowhere Winter panic attacks. (R. at 1056, 1090.) Lastly, while the ALJ pointed to several exams indicating good mental health, many of them took place in either November or March, when Winter either had not started or had already concluded. (R. at 679–80.) On remand, the ALJ must confront Plaintiff's seasonal depression head-on.

**(2)     The ALJ Must Re-Weigh Ms. Johnson's Opinion**

Ms. Johnson completed two questionnaires in which she assigned significant social and concentration limitations to Plaintiff. (R. at 649, 1138.) In both forms, Ms. Johnson opined Plaintiff would miss "[m]ore than four days per month" of work. (R. at 651, 1140.) Had the ALJ adopted the opinions, Plaintiff would be unemployable. (R. at 730.) Additionally, although Ms. Johnson completed the forms, Dr. Zeinab Tobaa, Plaintiff's treating psychiatrist, counter-signed them. (R. at 651, 1140.) The ALJ assigned the opinions "little weight" because he found the opined limitations too extreme compared to what the rest of the record suggested. (R. at 682.) Other courts have accepted this logic. *See e.g. Henke v. Astrue*, 498 Fed. Appx. 636, 637 (7th Cir. 2012) ("This doctor's sweeping conclusions lack support in the medical record").

Plaintiff, however, remains unconvinced. She first complains the ALJ misinterpreted these opinions as coming solely from Ms. Johnson rather than both her and Dr. Tobaa, arguing Dr. Tobaa's counter-signatures promoted the opinions to those of treating physicians. (Pl.'s Br. at 18.) Normally, courts will ignore counter-signatures when the doctor never examined the patient, *see e.g. Cooper v. Barnhart*, 2007 U.S. Dist. LEXIS 74527, *9 (S.D. Ind., Sept. 27, 2007) ("[T]here is no evidence that the doctor saw Ms. Cooper or that Ms. Macke consulted with the doctor in making her assessment."), or counter-signed the form out of obligation, *see e.g., Elliot v. Colvin*, 2014 U.S. Dist. LEXIS 33981, *9 (S.D. Ind., Mar. 17, 2014) ("[I]t appears to the Court that the form simply had to be countersigned by either a physician or a psychologist."). Here, the ALJ acknowledged that Ms. Johnson and Dr. Tobaa both completed the forms. (R. at 682.) However, the ALJ "[found] it appropriate to note that these forms appeared to be . . . merely countersigned by the psychiatrist." *Id*. The ALJ gave Dr. Tobaa too little credit. Plaintiff saw Dr. Tobaa multiple times over several years. (R. at 376–404, 1091–1105.) And Dr. Tobaa took substantial notes during these visits. In one example, the doctor's notes detailed Plaintiff's

sleep issues, alcohol abuse, and medication reactions. (R. at 539.) More importantly, the opinions themselves state, "Please have a doctor review this form and counter-sign it, *if he/she concurs with the above*" (emphasis added). (R. at 651, 1140.) Thus, unlike in *Cooper* and *Elliot*, Dr. Tobaa examined Plaintiff and signed specifically to concur with Ms. Johnson's judgment. The ALJ therefore erred in dismissing Dr. Tobaa as a mere counter-signer.

However, the error can be harmless when the ALJ discounts the opinion for reasons that would stand even if Dr. Tobaa himself wrote it. *Cf. Frain v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 166700, *21 (N.D. Ind., Nov. 26, 2014) ("[E]ven if Dr. Newman's counter-signature *did* elevate this opinion to an acceptable medical source opinion . . . that fact alone would not outweigh the inconsistencies and lack of support."). Here, the ALJ explains that Ms. Johnson's opinions were inconsistent with the treatment notes she and Dr. Tobaa took. (R. at 682). This is certainly a valid reason to discount an opinion, even one from a treating physician. *Cf. Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence.").

On the other hand, ALJs are required to evaluate medical opinions using a specific set of factors, of which consistency with the record is only one. *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).[2] However, an ALJ need not mechanically walk through each factor if the "decision makes clear that [the ALJ] was aware of and considered many of the factors." *Schreiber*, 519 Fed. Appx. at 959. Here, the ALJ spent nearly two full pages recounting Plaintiff's long treatment relationship with Ms. Johnson and Dr. Tobaa. (R. at 678–80.) He discounted this by finding that their opinions went against the weight of the years of treatment

---

[2] The court identified "the length, nature, and extent of the physician and claimant's treatment relationship, whether the physician supported his or her opinions with sufficient explanations, and whether the physician specializes in the medical conditions at issue" as some of the factors. *Elder*, 529 F.3d at 415 (internal citations omitted).

notes they took. (R. at 682.) Plus, the ALJ noted the opinions were "quite restrictive for someone who has depression and anxiety, but with symptoms that are mostly controlled by medications and therapy." (R. at 682.) This is often enough. *Cf. Schreiber*, 519 Fed. Appx. at 959 (affirming where the ALJ discussed the doctor's "treatment relationship with [the plaintiff], the consistency of [the doctor's] opinion with the record as a whole, and the supportability of her opinion"); *Ehrhart v. Secretary of HHS*, 969 F.2d 534, 539 (7th Cir. 1992) ("these medicines were providing relief and controlling his impairments"). Yet, the ALJ did not consider whether the opined limitations apply during Plaintiff's seasonal anxiety, and, if so, whether this would render Plaintiff disabled. Maybe employers will tolerate four absences per month if they are limited to Winter. Or maybe not. Or maybe the limitations are unwarranted even during Plaintiff's seasonal anxiety. That is for the ALJ to find on remand.

**(3) The ALJ Adequately Accounted for Plaintiff's Concentration Issues**

At step 2, the ALJ found Plaintiff had moderate difficulties in concentration, persistence or pace.[3] To account for this, the ALJ limited Plaintiff to "simple, repetitive and routine tasks." (R. at 676.) Plaintiff challenges this, arguing the ALJ's limitation only addresses whether she can complete the task at all, not whether she can repeat a task at a sustained pace. (Pl.'s Br. at 16–17.) Plaintiff's argument has merit. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("[T]he [ALJ] . . . must incorporate . . . any deficiencies . . . in concentration, persistence, or pace."). This is because an ALJ is not qualified to translate concentration issues into skill limitations—the two are not the same. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015). A doctor, however, can do this. Accordingly, when a doctor looks at a patient who has concentration issues and concludes

---
[3] For the sake of brevity, this Court will refer to such issues solely as concentration issues.

the patient can still perform, say, unskilled work, courts can allow an ALJ to simply quote the doctor and include only the unskilled work requirement. *Johansen v. Barnhart,* 314 F.3d 283, 289 (7th Cir. 2002).

Plaintiff argues *Yurt* and *Varga* did away with this concept. (Pl.'s Reply at 4.) But those cases merely found *Johansen* inapplicable to the facts before them. *Yurt*, 758 F.3d at 858 ("*Johansen* is not as applicable as the Commissioner suggests"); *Varga*, 794 F.3d at 816 (declining to apply *Johansen* because "no narrative translation exist[ed]"). On the other hand, one of our sister courts noted that "the Seventh Circuit has appeared to back of [the *Johansen*] approach." *Cloutier v. Colvin*, 2015 U.S. Dist. LEXIS 125905, *5 (E.D. Wis., Sept. 21, 2015). Yet, even that court acknowledged a *Johansen* scenario could still occur. *Id.* At *9. Granted, a day may come when courts distinguish *Johansen* into oblivion, but it is not this day. However, even though, for now, *Johansen* remains good law, whether it applies in this case is another story. Here, Dr. Kennedy completed a mental residual functional capacity assessment in which she checked boxes indicating Plaintiff had moderate concentration issues. (R. at 491–92.) In the form's narrative section, Dr. Kennedy clarified Plaintiff could nonetheless "understand, carry out and remember simple instructions . . . make judgments commensurate with functions of unskilled work . . . [and] deal with changes in a routine work setting," among other things. (R. at 493.) But the ALJ never included the unskilled-work requirement Dr. Kennedy found. So even if Dr. Kennedy provided an adequate translation, the ALJ did not use it.[4]

In her reply, Plaintiff argues the Commissioner's entire Dr. Kennedy discussion violates the *Chenery* doctrine, which forbids the Commissioner from relying on evidence the ALJ did not

---

[4] This may be harmless error. *Cf. Baumgartner v. Colvin*, 2013 U.S. Dist. LEXIS 156487, *45 (W.D. Wis., Oct. 31, 2013) ("while [the ALJ] may have omitted the further limitation that the work be unskilled, any error in doing so was harmless since all of the jobs identified . . . were in fact unskilled"). However, because this case is being remanded anyway, this Court will not address that possibility.

discuss. *See Browning v. Colvin*, 766 F.3d 702, 703 (7th Cir. 2014). This Court disagrees. The ALJ specifically mentioned Dr. Kennedy's opinion—albeit without mentioning the doctor by name—and afforded it "great weight." (R. at 680–81.) However, because courts seem to be less inclined to follow *Johansen*, the ALJ, on remand, should expressly determine whether Dr. Kennedy's narrative translation adequately captures Plaintiff's concentration issues.

### E. Conclusion

The ALJ failed to address Plaintiff's seasonal anxiety and, as a result, failed to consider whether Ms. Johnson's opined restrictions are warranted during Winter. Accordingly, this Court remands the ALJ's decision.

SO ORDERED on March 27, 2019.

S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE